UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

-------------------------------------------------------x
JOHAIRE WALKER, and KEYWANE          :
BALTIMORE, JR., individually and as  :
the legal guardians of minor K.B.,   :
                                     :        CASE NO.:
            Plaintiffs,              :
                                     :        Judge:
vs.                                  :
                                     :        Magistrate:
                                     :
REGINA COELI CHILD                   :
DEVELOPMENT CENTER,                  :
                                     :
            Defendant.               :
-------------------------------------------------------x

## COMPLAINT

Plaintiffs, MS. JOHAIRE WALKER, and MR. KEYWANE BALTIMORE, JR., individually and as the natural tutors and/or next of friends of K.B., by and through their undersigned counsel, hereby files this Complaint and sue REGINA COELI CHILD DEVELOPMENT CENTER (hereinafter "Defendant"), for injunctive relief and attorneys' fees/ costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et. seq.*("ADA"); and for damages, injunctive relief, and attorneys' fees/costs pursuant the Louisiana Commission on Human Rights, La. R.S. § 51:2247 *et seq.* ("LCHR") and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq* ("Rehab Act").

In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND PARTIES

1.    This is an action for relief pursuant to the ADA and Rehab Act.

2.    This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

1

3.     This is also an action for damages pursuant to the LCHL, La. R.S. § 51:2247 *et seq*.

4.     This Court is vested with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the facts which give rise to Plaintiff's ADA claim also give rise to Plaintiff's state-law claim.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6.     Plaintiff, K.B., is a minor residing in St. Tammany Parish, Louisiana.

7.     MS. JOHAIRE WALKER (hereinafter "Ms. Walker") appears in this action as the natural tutrix and/or next of friend of K.B., her son.

8.     Ms. Walker also asserts claims on her own behalf as an individual associated with an individual with a disability.

9.     MR. KEYWANE BALTIMORE, JR. (herein after "Mr. Baltimore") appears in this action as the natural tutor and/or next of friend of K.B., his son.

10.    Mr. Baltimore also asserts claims on his own behalf as an individual associated with an individual with a disability.

11.    K.B. is three years old.

12.    K.B. is a qualified individual with a disability pursuant to the ADA, as defined by 42 U.S.C. § 12102.

13.    K.B. is diagnosed with Autism Spectrum Disorder ("ASD").

14.    ASD is a "disability," as defined by 28 C.F.R. § 36.105(d)(2)(iii)(E).

15.    Upon information and belief, Defendant is a non-profit corporation organized in the State of Louisiana and having the domicile of 22476 Highway 190, Robert, Louisiana 70455.

16.    Upon information and belief, Defendant is the owner and operator of the Pearl River Head Start facility which is located at 63631 Highway 11 Pearl River, Louisiana 70452 (the

"Pearl River Head Start").

17.    All events giving rise to this lawsuit occurred in the Eastern District of Louisiana, St.

Tammany Parish, Louisiana.

## **FACTUAL STATEMENT**

18.    Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

19.    K.B. has ASD.

20.    K.B. and his parents live in St. Tammany Parish, Louisiana.

21.    Ms. Walker and Mr. Baltimore were excited for K.B. to attend the Pearl River Head Start,

so he could learn and interact with his peers.

22.    K.B.'s first day at the Pearl River Head Start was August 22, 2025. K.B. attended class at

the Pearl River Head Start and no problems were reported – neither by K.B. or Defendant.

23.    In accordance with an internal requirement of Defendant, on August 25, 2025, Ms. Walker

and Mr. Baltimore provided a medical form to Defendant completed by K.B.'s medical

professional.

24.    The form was required by Defendant.

25.    The form included basic information—such as K.B.'s height, his weight, etc.—and it

requested sensitive information, such as whether he had an autism screening and whether

he had any "Acute or Chronic Health Conditions[.]"

26.    K.B.'s medical professional wrote on the form that K.B. had "Autism Spectrum".

27.    Following receipt of this form, Defendant asked Ms. Walker and Mr. Baltimore for medical

documentation concerning K.B.'s diagnosis.

28.    As noted above, at this time, K.B. had been attending class at the Pearl River Head Start full-time since August 22, 2025.

29.    On September 25, 2025, Ms. Walker provided a detailed "Confidential Psychological Evaluation" to Defendant on K.B. (hereinafter "Confidential Psychological Evaluation").

30.    The document confirmed that K.B. has ASD.

31.    In a recommendation section, the medical professionals stated that K.B. should receive "accommodations and additional services (in the formal classroom setting) should [be] decided by his school team, but suggestions include visual aids (picture schedules, visual timers, etc.), one-on-one instruction, preferential seating, and scheduled breaks (breaks that occur daily at a specific time vs. contingent on frustration level)."

32.    Another recommendation states that K.B. would benefit from a "a language-rich environment. A language-rich environment means exposing [K.B.] to as much speech as possible. …"

33.    Nowhere in the recommendation section did it state that K.B. was a threat to himself or others.

34.    Nowhere in the recommendation section did it state that K.B. should attend school for a limited number of hours per day.

35.    After receipt of the Confidential Psychological Evaluation, Defendant began to call Ms. Walker and stated that K.B. needed to be picked up early for ordinary issues typical of

a 3-year-old, such as standing on a table or not sleeping through nap time.

36.    Shaniqua Edwards is Defendant's "Director of Center Compliance" at the Pearl River Head Start.

37.    On September 30, Ms. Edwards called Ms. Walker and Mr. Baltimore for a sit-down meeting.

38.    In that meeting, Ms. Edwards told Ms. Walker and Mr. Baltimore that K.B. was no longer going to be permitted to attend the Pearl River Head Start full time. Instead, he would only be permitted to attend for two hours per day.

39.    Without any other choice, Ms. Walker and Mr. Baltimore signed a form "agreeing" to this proposal. It was made clear to Ms. Walker and Mr. Baltimore that, if they did not agree to the reduced 2-hour per day schedule, K.B. would not be permitted to attend the Pearl River Head Start at all.

40.    The reduced 2-hour per day schedule is harmful and discriminatory for K.B.

41.    K.B. is not able to attend the Pearl River Head Start to the same level as his peers. Therefore, K.B. is not able to be in a "language-rich" environment with his peers.

42.    While other students at the Pearl River Head Start are able to learn from teachers and educators, K.B. is limited to two hours of education per day.

43.    Ironically, Defendant's proposal will make K.B. fall further behind his non-disabled peers.

44.    On October 23, 2025, Ms. Walker sent an email to Shanique Edwards, the Director of Center Compliance.

5

45.     In the email Ms. Walker explained:

> "I am writing to protest my son being excluded from full time participation the Pearl River Head Start on account of his disability. As you know, Pearl River Head Start is only permitting [K.B.] to participate in two hours of attendance per day.
>
> As a child with a disability, my son is entitled to participate in the programs and activities of the Peal River Head Start to the same extent as students without disabilities. Thus, I am requesting that, within seven days, you permit him to attend Pearl River Head start on a full time basis.
>
> Exclusion of my son because of his disability or manifestations of his disabilities constitutes unlawful disability discrimination. I look forward to hearing from you."

46.     Despite notice of a violation of K.B.'s civil rights, Defendant refused to let K.B. participate full-time at Pearl River Head Start.

47.     Instead, Ms. Edwards wrote back and stated that K.B.'s schedule was modified - not because of his disability, but to ensure the "health and safety" of K.B. and his peers.

48.     In support of her exclusion of K.B., Ms. Edwards cited a wholly irrelevant regulation, 45 C.F.R. § 1302.47, which she claimed, "requires programs to implement systems and practices that ensure the health and safety of all children in care."

49.     A review of that regulation, however, reveals that it has nothing to do with children with autism or other disabilities. Instead, it governs generic safety requirements, such as ensuring that the facility is free from pests, has safe playground equipment, has training related to the control of infectious diseases, etc.

50.     Indeed, the requirements for when a child with a disability can be excluded from a facility are contained in Title III of the Americans with Disabilities Act and states that an individual

6

can be excluded when they pose "a direct threat to the health or safety of others." *See* 28 C.F.R. § 36.208(a).

51.   To determine whether an individual constitutes a direct threat, Defendant was obligated to make "an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk."

52.   Here, Defendant did not articulate any specific risk that K.B. would constitute.

53.   Moreover, the medical evidence did not state that K.B. was a risk or that he should be limited to two hours of school time per day.

54.   Given the close timing between when Defendant received the Confidential Psychological Evaluation and when it excluded K.B., a reasonable inference can be drawn that Defendant excluded K.B. based on his disability.

55.   Defendant's citation to a completely irrelevant regulation in an attempt to justify its exclusion of K.B. further illustrates that the exclusion of K.B. was based on an improper motive, *e.g.*, excluding a student with a disability who would require extra resources to accommodate.

56.   Defendant's citation to otherwise innocuous activities that toddlers engage in—getting on furniture and not taking a full nap—further illustrates that the exclusion of K.B. was based

on an improper motive, *e.g.*, excluding a student with a disability who would require extra resources to accommodate.

57.    Defendant's inability to articulate the "health and safety" risks that K.B. allegedly posed to himself and his peers illustrates that the exclusion of K.B. was based on an improper motive, *e.g.*, excluding a student with a disability who would require extra resources to accommodate.

58.    K.B. was excluded because of his disability.

59.    To date, K.B. has not been permitted to attend the Pearl River Head Start full-time.

60.    As a result of Defendant's actions and failure to accommodate, K.B. has and is continuing to suffer the following damages:

- Reduced educational opportunities;

- Deprivation of a "language-rich" environment;

- Invasion of his civil rights; and

- Social and emotional regression.

61.    As a result of Defendant's actions and failure to accommodate, Ms. Walker and Mr. Baltimore have and are continuing to suffer the following damages:

- Mental distress and anxiety due to the exclusion of their son; and

- Reduced / decreased ability to work and earn income.

62.    Plaintiffs sue regarding Defendant's ongoing violation of federal civil rights law, and continued exclusion of K.B. because of his disability.

## CLAIM I: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

46.    Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

47.    At all times relevant to this action, the ADA has been in full force and effect and has applied to Defendant's conduct.

56.    Defendant owns and operates a place of public accommodation.

57.    Defendant violated the ADA by excluding a person with a disability based on their disability.

58.    By failing to permit K.B. to attend Pearl River Head Start for a full day, Defendant failed to make a reasonable modification.

59.    By failing to permit K.B. to attend Pearl River Head Start for a full day, Defendant violated the ADA regulations which expressly require that places of public accommodation permit an individual reasonable accommodations.

60.    By failing to permit K.B. to attend Pearl River Head Start for the full day, Defendant failed to provide K.B. with an equal opportunity to participate to the same degree as non-disabled students.

61.    To remedy Defendant's ongoing and continuous discriminatory conduct, Plaintiffs are entitled to seek and recover injunctive relief.

62.    Plaintiffs have retained the undersigned counsel and are entitled to recover reasonable attorneys' fees, costs, and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205.

## CLAIM II: VIOLATIONS OF THE REHABILITATION ACT

63.    Plaintiffs adopt and re-allege the allegations contained in all proceeding paragraphs as if fully stated herein.

64.    Upon information and belief, Defendant has been and continues to be a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794 and are therefore subject to the Rehab Act and its implementing regulations.

65.    The Rehab Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.   29 U.S.C. § 794(a).

66.    Upon information and belief, as set forth herein, Defendant has violated the Rehab Act by discriminating against K.B, solely by reason of his disability, from participation in, and denying him the benefits of, and has otherwise subjecting him to discrimination under, Defendant's programs and services.

67.    Upon information and belief, a non-exclusive list of Defendant's violations of the Rehab Act against K.B. are evidenced by:

A.    denying K.B. access to, and the opportunity to participate in or benefit from, the programs and services offered by Defendant;

B.    otherwise limiting K.B. in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who participate in the programs and services offered by Defendant;

C.    denying K.B. reasonable modifications/accommodations necessary for K.B. to participate in Pearl River Head Start.

68.    Defendant's discriminatory actions and inactions in violation of the Rehab Act were done with deliberate indifference to the substantial risk of discrimination against K.B.

69.    Plaintiffs have suffered damages because of Defendant's discrimination.

70.    K.B. has been, and without the relief requested herein will continue to be, denied access to the services, programs, and activities offered by Defendant solely by reason of his disability in violation of the Rehab Act.

71.    Plaintiffs have retained undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to recover their attorneys' fees, costs, and litigation expenses from Defendant pursuant to 29 U.S.C. §794(b).

## CLAIM III: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS, LA. R.S. § 51:2247

72.    Plaintiffs repeat and reiterate every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

73.    At all times relevant to this action, the LCHR has been in full force and effect and has applied the conduct of Defendant.

74.    At all times relevant to this action, K.B. has experienced substantial limitation to his major life activities, as alleged above; accordingly, K.B. has been an individual with a disability within the meaning of the LCHR.

75.    At all times relevant to this action, Defendant has been a place of public accommodation as defined by LA. REV. STAT. ANN. § 51:2232(9) by virtue of either supplying services to

11

the general public, soliciting and accepting the patronage of the general public, or having been supported directly or indirectly by government funds.

76.    The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

77.    The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 51:2264.

78.    Defendant discriminated against K.B., on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247, by denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations by restricting the hours he may attend Pearl River Head Start. For the same reasons that Defendant violated the ADA, Defendant violated the LCHR.

79.    Defendant's employee discriminated against K.B. by excluding him from and denying him the benefits of the Defendant's program or activity. Defendant's employee and contractor excluded, denied benefits to, and otherwise subjected K.B. to discrimination, on the basis of his status as a person with a disability, by refusing to let K.B. attend Pearl River Head Start for a full day.

80.    Defendant's employees were aware of K.B.'s diagnosis, as Ms. Walker and Mr. Baltimore had provided medical documentation including a Psychological Evaluation to Defendant.

81.    Ms. Walker and Mr. Baltimore deem K.B. and themselves injured by Defendant's

discrimination and bring suit under the LCHR to recover compensatory damages for the injuries and loss they and K.B. sustained as a result of Defendant's discriminatory conduct and intentional discrimination herein.

82.    By and through the factual narrative outlined above, Defendant was intentional in discriminating against K.B.

83.    By and through the factual narrative outlined above, Defendant's failure to accommodate was not as a result of a simple oversight or failure to appreciate the nuance of a technical building code. Instead, Defendant's failure to accommodate K.B. was a purposeful decision.

84.    Ms. Walker and Mr. Baltimore pray for a recovery of compensatory / actual damages sustained by K.B. and themselves through the date of trial.

85.    In addition to compensatory damages, Ms. Walker and Mr. Baltimore pray for and seek nominal damages. It is Ms. Walker and Mr. Baltimore's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in his favor against Defendant, regardless of the amount, would deter educational entities from discriminating against disabled individuals in the future, would lead to change to Defendant's policies / practices, and would spark public discussion on the need to accommodate individuals with disabilities.

86.    Ms. Walker and Mr. Baltimore are further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR. LA. REV. STAT. ANN. § 51:2264.

WHEREFORE, Plaintiffs demand judgment against Defendant, and request the following injunctive relief, compensatory damages, nominal damages, and attorneys' fees and costs:

A.  Enter permanent and/or preliminary injunctive relief pursuant to the ADA, Rehab Act, and LCHR. The full scope of requested injunctive relief is to be determined as the case proceeds, but Plaintiff's initial request is as follows:

  i.  That K.B. be permitted to attend Pearl River Head Start for the full school day;

  ii.  That Defendant be ordered to develop policies/procedures concerning the admission of students with disabilities;

  iii.  That Defendant be ordered to develop policies/procedures concerning not making unreasonable inquiries concerning disability accommodations; and

  iv.  That Defendant be ordered to submit its staff to training on the requirements of the ADA.

B.  Award to Plaintiffs:

  i.  Compensatory / actual damages for any loss pursuant to the LCHR and Rehab Act;

  ii.  Nominal damages pursuant to the LCHR and Rehab Act;

  iii.  Reasonable costs and attorneys' fees pursuant to the ADA, LCHR and Rehab Act;

  iv.  Interest on all amounts at the highest rates and from the earliest dates allowed by law;

  v.  Any and all other relief that this Court finds necessary and appropriate.

14

B.   That this Court award such other and further relief as it deems necessary, just and

proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.


Dated: December 3, 2025

<div style="margin-left:40%;">

Respectfully Submitted,


By:/s/ Garret S. DeReus

BIZER & DEREUS, LLC
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Eva M. Kalikoff (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

***AND***

CHRIS EDMUNDS LAW OFFICE
Chris Edmunds (LA # 37670)
chrisedmundslaw@gmail.com
740 Dante Street
New Orleans, LA 70118
T: 504-314-0034

*Attorneys for Plaintiffs*

</div>

15